EXHIBIT 2



# FRAMEWORK AGREEMENT 2289-STN-22

This FRAMEWORK AGREEMENT ("Agreement ") is made as of 25/01/2022 by and between:

KUNSHAN KOOLCARE TECHNOLOGY CO., LTD (the "Supplier") represented by Legal Representative Weixin Gao, acting pursuant to the Memorandum and Articles of Association, and
**Stenn Assets UK Limited** (the "Company") represented by its Director Greg Karpovsky, acting on the basis of the Memorandum and Articles of Association.

WHEREAS, the Supplier is the owner of monetary account(s) receivable under certain trade arrangements (the "Accounts Receivable"), as described in more detail in Exhibits attached to and incorporated herein;

WHEREAS, the Supplier desires to transfer to the Company its entire right, title and interest in and to the Accounts Receivable; and

WHEREAS, the Company wishes to acquire the Accounts Receivable from the Supplier.

The Supplier and the Company agree as follows:

1. Transfer of the Accounts Receivable.  The Supplier transfers, conveys, sells and assigns all rights, title and interest to the Accounts Receivable to the Company and the Company pays to the Supplier the purchase price (the "Price") for the Accounts Receivable as specified in the relevant Exhibit to this Agreement. The Company hereby accepts such assignment. For the purposes of this Agreement, the parties may execute the documents in writing or with the use of electronic signatures via cloud based electronic platform eSignLive at www.esignlive.com, provided the authorization to use electronic signatures and access to eSignLive is provided by the Company to the Supplier. By submitting the documents via eSignLive, the Supplier represents and guarantees to the Company that the documents are true, valid and binding.

2. Further Transfer of the Accounts Receivable.  For further transfers of the Accounts Receivable to the Company, the parties shall execute additional Exhibits. The Accounts Receivable transferred to the Company represent purely monetary claims to the relevant debtor under the underlying documents, and the Company will not be liable or be bound under the relevant trade arrangement.

3. Further Assurances.

    (a) Upon request by the Company, the Supplier will execute and deliver further instruments and take further actions as may be necessary to evidence more fully the transfer to the Company of ownership of the Accounts Receivable.

    (b) In case any payment or other performance in respect of any of the Accounts Receivable is made to or recovered by the Supplier, the Supplier must (i) immediately inform the Company of this fact in writing or via email to its principal point of contact with the Company, and (ii) transfer the value received by the Supplier to the Company within two (2) Business Days (i.e. days on which commercial banks are open for business in China, the U.S. and the UK) after the Supplier's receipt of such payment or performance, or on such other date or as otherwise specifically requested by the Company in writing.

    (c) The Company may be entitled to retain from the Price a reserve of up to 20% of the value of the



invoices if agreed upon between the Supplier and the Company in the Exhibit to cover potential discounts, rebates and non-credit dilutions. Any over-recovery will be transferred to the Supplier within five (5) Business Days after the Company's receipt of the final payment from the account debtor related to the Accounts Receivable for which the reserve was retained.

(d) In the event that any payment from a debtor of the Supplier with respect to the Accounts Receivables is received by the Company in capacity of the Company as a pass-through agent of the Supplier in respect of such funds, the Company will transfer the value received to the Supplier within a reasonable time after the Company's receipt of such payment.

4. <u>Representations and Warranties.</u> The Supplier represents and warrants that:

(A) the Accounts Receivable are valid and fully collectible from the debtors, conform in all respects with the quality and quantity parameters, and all other terms agreed between the Supplier and each account debtor, and the Supplier has the legal right to sell, assign, transfer and set over the Accounts Receivable to the Company free and clear of any encumbrance of any type;

(B) any contract and/or agreement and/or any other document underlying any of the Accounts Receivable is in compliance with all applicable laws, does not contain clauses that may harm the Company's interests, is executed in full respect of existing and applicable currency exchange control and customs regulations, and was approved by the relevant governing bodies of the Supplier and/or of the relevant debtor (in case needed), and all of the related document were executed by duly authorized representatives of the Supplier and of the relevant debtor;

(C) as of the date the relevant Exhibit is signed by the parties, the Accounts Receivable (or any other account receivable between the Supplier and account debtor) are not overdue;

(D) there are no disputes or other offsets or counterclaims against any of the Accounts Receivable;

(E) the Accounts Receivable are not transferred, assigned, pledged or encumbered in any other way as at the date of the relevant Exhibit, and the Accounts Receivable will at all times be kept free and clear of any encumbrances;

(F) the Supplier will not, and will ensure that the relevant debtor does not amend and/or supplement and/or terminate any contract and/or agreement and/or any other documents underlying any Account Receivable without prior written approval of the Company;

(G) as of the date the relevant Exhibit is signed by the parties, the relevant debtor is not, or has not in the last 24 months been, in voluntary or compulsory liquidation, nor bankrupt, nor under receivership or judicial management, and there are no such proceedings pending against it;

(H) the Supplier is not, or has not in the last 12 months been, in voluntary or compulsory liquidation, nor bankrupt, nor under receivership or judicial management, and there are no such proceedings pending against it;

(I) the Supplier has not received any advance payment on an Accounts Receivable, or any part thereof, other than advance payments disclosed in the relevant Exhibit; and

(J) notwithstanding the transfer of the Accounts Receivable to the Company, the Supplier will remain liable

Tel +44 (0) 20 3735 9080
stenn.com



to satisfy all conditions and obligations to be observed and performed by it under the contract and/or agreement and/or any other documents underlying the Accounts Receivable in terms of delivery terms and conditions, quantity and quality of goods. Neither this Agreement nor execution and/or receipt by the Company of any payment shall cause the Company to be under any obligation or liability to indemnify/reimburse any debtor nor to perform or observe any of representations, warranties, obligations, conditions or covenants of the Supplier in regards to such Accounts Receivable transferred hereunder.

The representations and warranties in this Clause 4 (save for sub-clauses (C) and (G) above) will be deemed repeated on each day during the term of this Agreement by reference to the facts and circumstances subsisting on each such day. In case of any breach of any representation or warranty indicated above, the Supplier will immediately notify the Company.

5. <u>Non-recourse.</u> Unless the Supplier breaches a representation or warranty set out above, or the Supplier/Supplier together with the debtor commits any act of fraud or sham, the Supplier transfers the Accounts Receivable to the Company without recourse against the Supplier in the event of non-payment by any debtor, and, therefore, the Supplier will not be liable for the insolvency of debtors, and the risk of debtors' financial inability to pay will be assumed by the Company.

However, the transfer of such Accounts Receivable will be with recourse, the Supplier will reimburse the Company in an amount equal to the Price paid for the Accounts Receivable, together with amounts of any damages/losses caused, the Supplier will be liable for the insolvency of its debtors, and the credit risk will be assumed by the Supplier, with all legal consequences thereof, upon the occurrence of any of the following:

(i) In case of breach of any of the Supplier's representations and/or warranties; and/or

(ii) In case of Supplier/Supplier together with the relevant debtor commission of any act of fraud; and/or

(iii) The Supplier fails to perform any of its obligations set out in Clause 6 below.

6. <u>Conditions Precedent:</u>

(a) The Supplier will notify the relevant debtor under the Accounts Receivable upon transfer to the Company of all monetary rights, title and interest to the transferred Accounts Receivable in accordance with one of the following procedures:

(i) The Supplier will sign and send a notice of assignment of the Accounts Receivable (hereinafter referred to as the "Notice") to the relevant debtor and will procure that the relevant debtor acknowledges the transfer by providing the Notice countersigned by an authorized representative of the relevant debtor to the Company.

(ii) If the Company considers it acceptable, the Company may send the Notice to the Supplier and/or the relevant debtor by any means of communication, which the Company considers acceptable. The Supplier will execute any further form of notice or documents with respect to the transferred Accounts Receivable as may be requested by the Company and procure provision to the Company of such notice.

Tel +44 (0) 20 3735 9080
stenn.com



Both the Supplier and the Company confirm that any kind of signature (including, but not limited to, electronic signature) of the authorized representative of the relevant debtor on the copy of such Notice will be deemed to be due notification of the relevant debtor on transfer of the Accounts Receivable.

(b) Supplier will provide the Company with true, valid and binding copies of all the documents confirming the authenticity of the Accounts Receivable including contract, invoices, transportation documents, etc. as may be requested by the Company, all in form and substance satisfactory to the Company.

(c) The Company will notify the Supplier when all the above conditions precedent have been satisfied.

7. <u>Payment of the Price.</u> The Price for the relevant Accounts Receivable will be payable by the Company to the Supplier not later than five (5) Business Days after all conditions precedent stipulated in Clause 6 above are performed in full and the relevant Exhibit is signed by the parties.

Payment of the Price shall be made to the following account of the Supplier:

Beneficiary: Kunshan Koolcare Technology Co., Lt
Beneficiary's address: d 126 QIANJIN MID-RD, KUNSHAN, JIANGSU, CHINA, CN
Beneficiary's IBAN No: ▇▇▇▇▇▇▇▇▇▇732
Beneficiary's bank: CHINA CONSTRUCTION BANK CORPORATION, SUZHOU BRANCH
Beneficiary's bank SWIFT: ▇▇▇▇▇JSS

8. <u>Conditions Subsequent.</u>

(a) Not later than five (5) Business Days following receipt of the Price from the Company, the Supplier shall provide the Company with originals of documents specified in Clause 6 (b) above or certified copies either by authorized representative of the Supplier or by authorized representative of the relevant debtor, as may be requested by the Company.

9. <u>Miscellaneous.</u>

A. This Agreement together with Exhibits constitutes the entire agreement between the parties with respect to the specific subject matter and supersedes all prior agreements or undertakings of any kind with respect to the specific subject matter.

B. This Agreement will come into effect on the date of its signing by authorized representative of the parties and will remain in effect for a period of 12 months. This Agreement will automatically continue for additional terms of 12 months each after the expiration of the initial term unless terminated by either party upon 10 days prior written notice, provided that the Supplier and relevant debtors under the Accounts Receivable will remain liable and accountable for all outstanding obligations under this Agreement and under the relevant trade arrangements.

C. Any modification to this Agreement must be in writing and signed by the parties or it will have no effect and will be void.

D. The Supplier will not transfer or assign its rights or obligations under this Agreement. The Company may



assign and/or transfer any of its rights and obligations hereunder, and such assignment and/or transfer shall be binding upon the Supplier, to the benefit of the successors, licensees and/or assignees of the Company.

E. This Agreement, the issues relating to its validity, construction, interpretation, and enforcement, and the rights of the parties will be determined under, governed by, and construed in accordance with English Law.

The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement ("**Disputes**').

The Company and the Supplier agree that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary.

This Agreement as to the jurisdiction of English courts is for the benefit of the Company only. As a result, the Company shall not be prevented from taking proceedings relating to a Dispute in any other courts with jurisdiction. To the extent allowed by law, the Company may take concurrent proceedings in any number of jurisdictions.

This Agreement has been signed and delivered by and on behalf of the parties.

| For the Supplier | For the Company |
|---|---|
| DocuSigned by: *WG* — 117983AEF16944C... | DocuSigned by: *Gregory Karpovsky* — AC67634B9BE046E... |
| Weixin Gao | Greg Karpovsky |
| Legal Representative | Director |

Tel +44 (0) 20 3735 9080
stenn.com